Antonio Kenneth **BAHENA**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 55928.

Court of Criminal Appeals of Texas,
En Banc.

Jan. 25, 1978.

Appellant's Motion for Rehearing
Denied Feb. 15, 1978.

Joseph A. Calamia and Charles Michael Mallin, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. and Douglas Gelo, Asst. Dist. Atty., El Paso, for the State.

## OPINION

ODOM, Judge.

This is an appeal from an order revoking probation. Appellant was convicted of robbery, punishment was assessed at ten years, and he was placed on probation. One condition of his probation was that he commit no offense against the laws of this state. On December 17, 1976, a motion to revoke appellant's probation was filed alleging that he violated the terms of his probation by committing the offense of unauthorized use of a motor vehicle (V.T.C.A., Penal Code Sec. 31.07) on December 5, 1976. Following a hearing on February 23, 1977, appellant's probation was revoked and punishment was reduced to five years.

Appellant contends the trial court abused its discretion in revoking his probation because it denied his motion for continuance and because the unrebutted evidence shows he did not voluntarily engage in the conduct for which his probation was revoked and lacked the culpable mental state required under the law. We will address the second contention first.

The motion to revoke alleged that appellant did:

"intentionally and knowingly operate a motor-propelled vehicle, to-wit: an auto-

mobile, without the effective consent of Armado Nava, Jr., the owner thereof."

Evidence was presented showing that on the evening of December 5, 1976, appellant was the lone occupant and driver of an automobile involved in a one-car accident at the Paisano on-ramp to I–10 in El Paso. Armando Nava of the El Paso police department arrived at the scene to investigate and found appellant standing by his car and holding his arm up with a rag wrapped around his wrist, which was bleeding profusely. Nava asked appellant if he wanted to go to the hospital, and appellant answered, "Yes I would like to." Appellant related to Nava how the accident occurred in a coherent manner, and Nava accompanied appellant to the police car where he sat appellant in the back seat and administered first aid to his wrist. Appellant was coherent and exhibited an awareness of having been in an accident. He was confused and concerned about whether he was going to be taken to jail or to the hospital, but he was not in shock and did not appear to be under the influence of alcohol or drugs. After appellant was seated in the back seat of the police car, Nava started toward appellant's car to obtain the registration and license plate numbers when he heard a door slam, turned around, and saw appellant had moved to the front seat in the driver's position. Appellant then drove off in the patrol car and a short distance away collided with a city bus. He was unconscious at the scene with injuries to the head, and was taken to a hospital. Nava further testified he had custody of the police car and did not give appellant consent to operate it.

Friends of appellant testified that on the afternoon before these events appellant was visiting in their home when he exhibited unusual behavior. He began shaking and appeared to have trouble breathing. He fell from his chair to the floor shaking, his eyes bulged, and he was unresponsive to questions. After a time he recovered but was disoriented as to where he was, and had no recollection of what had happened. He vomited, and then went outside for fresh air. One friend intended to take him to the hospital, but he left first. The first accident occurred a short time later.

Appellant testified that he had no recollection of the events between when he blacked out at his friends' and when he woke up in the hospital after the accidents.

Court-appointed psychologist Randolph Whitworth testified for appellant at the hearing on the motion for continuance and his testimony was considered also on the merits of the motion to revoke probation.

Whitworth's report described tests administered to determine appellant's psychological and intellectual condition, and addressed his competence to stand trial. In his eight page report Whitworth digressed briefly to make these comments:

> "His description of his loss of consciousness with no apparent precipitating cause, which have occurred several times in the past, however, suggests the possibility of an organic or physiological problem. From his admittedly inexact description, the examiner suspects the possibility of *grand mal* epileptic seizures. No history of epilepsy other than these occasional losses of consciousness was evident from either the interview with him or his mother. Nevertheless, it is the examiner's opinion that Mr. Bahena should have a complete neurological examination, including electroencephalographic recordings, to determine if there is any organic involvement, either epilepsy or some other condition."

Whitworth was examined extensively on the subject of epilepsy. He was quick to point out, however, that any judgment regarding appellant would be pure speculation on his part, and that they were treading on an area beyond his expertise, inasmuch as he is a psychologist, not a medical doctor. After making it clear that he could not make a diagnosis of epilepsy, he did testify to the textbook descriptions of *grand mal* seizures and *petit mal* seizures.

> "A. Generally there is a grand mal seizure, there is an immediate and with-

out much prewarning a seizure, a loss of consciousness, in which the subject simply falls and is unaware of events occurring around him, quite frequently has what is referred to as convulsions, as most of you are familiar, tend to bite his tongue, swallow his tongue, and so forth. Generally when he recovers consciousness he is unaware of any events that have occurred from the time that he lost consciousness until he has recovered. This may last for a period of minutes and it may be as long as a period of several hours, but not generally. It is usually a fairly short duration.

"Q. Can there be a minimal loss of consciousness coupled with confusion as a symptom of the illness you have described?

"A. This is possible. It is possible with petit mal seizures in which the individual loses consciousness or loses awareness, but does not generally lose control of his motor behavior, that is he may simply sit and be talking to you—if I may describe the behavior—he may simply sit and be talking to you and very briefly lose consciousness. There is usually a rather blank look that comes over the face, and he recovers and does not fall or anything or go into convulsions. Again, I did not observe this. I am just explaining."

\*    \*    \*    \*    \*    \*

"Q. I believe you said a person who experiences a grand mal seizure loses consciousness in thoughts?

"A. Well generally he loses motor control, he falls, generally will slump.

"Q. And then he has convulsions?

"A. Most of the time he will, he will certainly show symptoms that will be considered overall severe motor convulsions.

"Q. During that period of time he would be incapable for all purposes?

"A. Yes sir."

\*    \*    \*    \*    \*    \*

"Q. Doctor, a person who is under a seizure of petit mal would not necessarily be in a state of convulsions?

"A. That is correct.

"Q. But what as to his awareness or knowing what is going on about him or what is happening or what he is doing?

"A. This is an extremely difficult question to answer. Generally one assumes that the loss of consciousness in petit mal seizure is of very brief duration, it is usually seconds. That is why it is referred to as the small seizure. It is not usually one in which he loses consciousness for more than a few seconds.

"Q. But during that period the experience of loss of consciousness he is not aware of what is happening?

"A. That is correct.

"Q. I will ask you whether or not he is able to control himself?

"A. Generally again for that period of time he probably would not be.

"Q. Would you describe to the Court if you will what the symptoms are, what the apparent symptoms are of a person under the seizure of petit mal?

"A. Very few observable in most cases, having observed a number of instances and unless you are aware and know what to look for you often would not recognize them. As I said the individual may be talking to you and there will be a period of time in which he simply loses what is apparently his contact, but this will only be for a few seconds. The only apparent times, you will see a person who is rather blank looking, a blank look will come over his face, his eyes will perhaps glaze, and this will last for a few seconds and he will shake his head and often say 'I'm sorry I was out of it for a few moments', but this is the extent of a petit mal seizure.

"Q. I take it then in convulsions and seizures they generally occur and are associated with the diagnosis of grand mal epilepsy, is that correct?

"A. Again, the distinction between these are somewhat overlapping, but again, are neurologically specific and again in terms of electroencephalographic recording, and this sort of thing."

Regarding the events on December 5, Whitworth testified that appellant was able to recall being at his friends' house, that his next recollection was turning onto the freeway, that he next recalled being in a car with blood on the car and being in a car with a policeman, and that his next recollection was waking up in the hospital.

Appellant argues that this evidence shows "that because of some type of mental illness or physical condition that he did not voluntarily engage in conduct which was the basis of the revocation." Appellant concedes that the trial judge as the trier of the facts was the sole judge of the credibility of the witnesses and the weight to be given their testimony. In this case, at issue were the events and actions of the appellant between the time Nava left him in the back seat of the police car and the time appellant drove it away. Appellant's defensive evidence in no way contradicted Nava's testimony showing the commission of the alleged offense. In fact, Whitworth's testimony on the nature of epileptic seizures supports the conclusion that even if appellant at times suffers such seizures, he could not have been in that state at the time he took the driver's seat and drove off. The trial judge did not abuse his discretion in finding the allegations in the motion to revoke were true.

We turn now to the denial of appellant's motion for continuance. Whitworth submitted his report to the court on February 17, 1977, and appellant's counsel received a copy the next day. He filed a motion for continuance on the day he received the report noting that the hearing was set for February 23, quoting the portion of the report referring to the possibility of epilepsy (quoted hereinabove), and asserting a need for additional time to secure the recommended medical tests in order to adequately prepare a defense.

Regarding the time counsel had to secure other medical tests, we observe that the record contains appellant's "Motion to Try Charges Which Are the Basis to Revoke Probationer's Adult Probation Prior to Trying This Revocation." This motion was filed on February 2, 1977, three weeks before the hearing on the motion to revoke, and alleges inter alia:

"The Probationer-Defendant intends to assert as a defense to both the revocation and the aforementioned indictment that at the time the incident occurred, which is the basis for the revocation and the indictment, he was suffering from a state of unconsciousness, amnesia and motor epilepsy."

This instrument shows that counsel was aware of and considering the possibility of a defense based on epilepsy three weeks before the hearing. Thus, the psychologist's report of February 17 was not his first acquaintance with this possibility. Diligence in seeking evidence for such a defense is not shown.

Furthermore, even if appellant had secured evidence that he on occasions experiences epileptic seizures of the *grand mal* or *petit mal* type, as stated under discussion of appellant's first contention above, Whitworth's testimony on the nature of epileptic seizures would support the conclusion that appellant could not have been experiencing such a seizure at the time of the acts he was charged with and found to have committed. Susceptibility to such seizures would not contradict the state's evidence in this case and would be no defense.

The trial court did not abuse its discretion in denying the motion for continuance.

The order revoking probation is affirmed.

ROBERTS, J., concurs in the result.

PHILLIPS, J., dissents.