IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 20, 2004 Session

## STATE OF TENNESSEE v. MARSHA KAREN YATES

**Direct Appeal from the Criminal Court for Sullivan County**
**No. S46,486     Phyllis H. Miller, Judge**

---

**No. E2003-01900-CCA-R3-CD - Filed June 30, 2004**

---

Following a revocation hearing, the trial court revoked the probation of Defendant, Marsha Karen Yates, and ordered her to spend the remainder of her sentence in confinement. On appeal, Defendant argues that the trial court abused its discretion in revoking her probation. After a careful review of the record in this matter, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID H. WELLES and JOE G. RILEY, JJ., joined.

Stephen M. Wallace, District Public Defender; and William A. Kennedy, Assistant District Public Defender, Blountville, Tennessee, (on appeal); and Carey Taylor, Kingsport, Tennessee, (at hearing), for the appellant, Marsha Karen Yates.

Paul G. Summers, Attorney General and Reporter; Michelle Chapman, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and William B. Harper, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I. Background

Defendant pled guilty on February 19, 2003, to one count of theft under $500, a Class A misdemeanor. Defendant was sentenced to eleven months and twenty-nine days in jail, all being suspended except for forty-five days. After serving approximately sixteen days in jail, the trial court granted Defendant's request for a furlough from March 7, 2003 to April 6, 2003 because of a family emergency.

A warrant for probation violation was filed on May 12, 2003 alleging that Defendant had violated her probation by failing to obey the law. Specifically, the warrant alleged that Defendant

violated Tennessee Code Annotated section 39-16-201 because drugs were found in Defendant's possession on April 12, 2003 while she was in confinement. Defendant admitted on May 8, 2003 that she had brought Xanax, a Schedule IV controlled substance, and the legend drugs, Wellbutrin and Zoloft, into the jail when she returned from her furlough. Defendant further admitted that she knew this was a violation of the law.

At the probation revocation hearing, Defendant admitted that she took her prescription medicine, including Xanax, Wellbutrin and Zoloft, with her when she began serving her forty-five day sentence in February, 2003. Defendant voluntarily gave the drugs to the nursing staff who said that they would administer Defendant's medicine. Defendant testified, however, that she did not receive her medications. Defendant said that when her sister spoke to the attending nurses, she was told that the staff had given Defendant her medication.

Defendant stated that she was on ten different prescription medicines at the time of her first incarceration, including four types of medicine for diabetes as well as Xanax, Somas, Trazodone, Neurontin, and Hydroxyzine. Her family doctor, Dr. Hollingsworth, prescribed defendant's diabetes medications, and her psychiatrist, Dr. Moffett, prescribed her psychotropic medications during the time of her furlough. Defendant had been under psychiatric care since 1986 but did not initially see Dr. Mofett until May, 2003. Dr. Moffett adjusted her psychotropic medicine at that time to include Vistaril, Zoloft, Neurontin, Xanax and Wellbutrin.

Defendant said that the nursing staff did not give her any of her psychotropic medications while she was in jail. Defendant said that she was given one of her diabetic medicines about ten days after she was incarcerated because she became ill when her medicines were not provided. Defendant stated that she asked the nurses and guards repeatedly for her medicine because she was beginning to have auditory and visual hallucinations as well as nightmares without her medicine.

After Defendant was in jail for eighteen days, her mother had a heart attack. The trial court granted Defendant a thirty-day pass on March 7, 2003. While she was on furlough, Defendant said that she took her medications as prescribed. Defendant admitted that she brought her medicine with her when she returned to jail at the end of the furlough despite being previously told not to do so by Sergeant Barbara Hensley. Defendant said that she only brought enough medicine to last fifteen days, the remaining length of her sentence. This included thirty Xanax tablets, fifteen Wellbutrin tablets, and twenty-two and one-half Zoloft pills. Defendant administered the medications to herself and said that she did not share them with anyone.

Three or four days after Defendant returned to jail, her medicine was discovered during a jail-wide search and taken away from her. Defendant said that without her medicine she began to hallucinate, grew paranoid, and her nightmares returned. Defendant said that she slept on the floor and suffered from nausea and diarrhea.

Defendant conceded that she knew that she should not have brought the medicine into the jail, but said that she needed the drugs "to stay sane." According to a letter written by Dr. Moffett

prior to the revocation hearing, Defendant is suffering from a panic disorder, paranoia, kleptomania and schizophrenia. Dr. Moffett wrote that Defendant should not be taken off Neurontin or Xanax abruptly because this would cause potentially life threatening complications. Defendant said that she was "scared to death" without her medicine and was afraid that she would "lose her mind." Defendant said that her trial counsel requested permission for Defendant to serve her last fifteen days on weekends, but the trial court denied the request.

On cross-examination, Defendant admitted that she had served ninety days on another theft charge but said that she was given her medications during this confinement. Defendant said that she was told that the jail's policy had changed when she was incarcerated on the current charges. Defendant said that the staff told her that the jail's doctor would "prescribe what he wanted to" and that he did not believe in prescribing narcotics, including the types of drugs taken by Defendant. Defendant decided to bring her medicine with her when she returned from her furlough because she knew the staff would not provide her medicine as prescribed. Defendant admitted that she did not tell the staff that she had her medicine with her when she re-entered the jail.

During redirect examination, Defendant said that she never saw or spoke to a doctor during her incarceration.

The trial court then questioned Defendant. Defendant said that she went to jail on February 19, 2003. Defendant said that her prescriptions were refilled by family members on March 8, 2003 even though she had not been taking her medicine so that she could maintain her schedule. Defendant said that she kept the pills in a plastic bag that she kept in her bra. Defendant said that no one in her cell saw her take her medicine or knew that she had medicine. Defendant said that the other inmate who was caught with Xanax while Defendant was in jail did not get any of the drug from Defendant. Defendant said that she had been hospitalized twice in Holston Valley Hospital and four or five times in Parthenon Pavilion for psychiatric care.

Cheryl Carter, a nurse with the Sullivan County jail, also testified. Ms. Carter agreed that Defendant was not given her diabetes medication when she was first incarcerated. Ms. Carter said, however, that Defendant noted in her booking information that she controlled her diabetes by diet instead of medication. Defendant also noted that she was not taking any medication. Ms. Carter said that a family member brought some of Defendant's medications to the jail on February 24, 2003.

On February 23, 2003, Defendant filled out a "sick sheet" requesting her diabetes medication and complaining of a backache and chills. Ms. Carter said that Defendant complained of diarrhea on February 28, 2003 and was given Pepto Bismol tablets twice a day for three days. Ms. Carter explained that in order to insure proper administration of medications, the inmate was required to provide a medical release from the inmate's doctor. Alternatively, a family member could bring the inmate's medications to the jail for evaluation by the jail's doctor.

Ms. Carter said that Defendant properly submitted a request to see the doctor on March 3, 2003. Although the request was reviewed, the jail's records did not indicate that Defendant actually

saw the doctor. Ms. Carter said that the jail's only procedure for obtaining medical assistance was by means of the "sick sheet," and the jail's medical records would not reflect any complaint not recorded on the sick sheet. Ms. Carter also conceded that if an inmate asked a staff member for medical assistance, and that staff member did not want to alert the medical staff, then the verbal complaint would not be recorded.

Ms. Carter said that the doctor reviewed all of the inmates' medications pursuant to the jail's policy. The county issues a list of approved medications that may be taken during incarceration. Ms. Carter explained that if an inmate took Xanax prior to incarceration, the jail's doctor would either substitute another drug or take the inmate off the medication and monitor the inmate's behavior. According to her records, Ms. Carter said that the jail's doctor did not personally examine Defendant while she was incarcerated.

Ms. Carter admitted that the second "sick sheet" submitted by Defendant indicated that she had been on Xanax before, and that Defendant complained of auditory and visual hallucinations, and claustrophobia on the third "sick sheet." Ms. Carter said that none of the jail's other medical records indicated that Defendant was either on Xanax or that Xanax was one of the medications that Defendant's family members brought for her to the jail.

Ms. Carter admitted that the jail's doctor, a general practitioner, had reviewed Defendant's medical records, including her prescription history. Ms. Carter said that the doctor commented on February 25, 2003, that he did not know how Defendant could "function on all of those medications." The doctor decided not to administer the Defendant's psychotropic medication but that he would administer Defendant's diabetes medicine. Ms. Carter said that "monitor" meant that the doctor would depend on the nursing staff to report any problems.

At the conclusion of the hearing, the trial court found that Defendant's possession of a controlled substance and legend drugs while incarcerated violated the terms of her probation. The trial court revoked Defendant's probation and ordered the remainder of her sentence to be served in confinement.

## II. Analysis

The decision to revoke probation rests within the sound discretion of the trial court. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). The trial court's revocation of a defendant's probation is subject to an abuse of discretion standard of review. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the person has violated a condition of probation. Tenn. Code Ann. § 40-35-304(b).

On appeal, Defendant argues that although her possession of a controlled substance and legend drugs while in jail was an unlawful act in violation of her probation, her conduct was justified

under Tennessee Code Annotated section 39-11-609. The State argues that statutory defenses are not applicable in a probation revocation hearing.

A defendant who is granted probation has a limited liberty interest that is protected by due process of law. *Gagnon v. Scarpelli*, 411 U.S. 778, 781, 93 S. Ct. 1756, 1759, 36 L. Ed. 2d 656 (19730); *State v. Stubblefield*, 953 S.W.2d 223, 225 (Tenn. Crim. App. 1997). To satisfy the minimum requirements of due process, the following requirements must be met: "'(a) written notice of the claimed violations of (probation or) parole; (b) disclosure to the (probationer or) parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body . . .; and (f) a written statement by the fact finders as to the evidence relied on and reasons for revoking (probation or) parole.'" *Gagnon*, 411 U.S. at 786; 93 S. Ct. at 1761-62 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S. Ct. 2593, 2604, 33 L. Ed. 2d 484 (1972)). Although the strict rules of evidence do not apply during a probation revocation hearing, the defendant nevertheless enjoys the right of confrontation and cross-examination, and the right to introduce evidence in his or her own behalf. Tenn. Code Ann. § 40-35-311(b); *State v. Wade*, 863 S.W.2d 406 (Tenn. 1993); *State v. Gabel*, 914 S.W.2d 562 (Tenn. Crim. App. 1995)*; State v. Carney*, 752 S.W.2d 513 (Tenn. Crim. App. 1988); *Barker v. State*, 483 S.W.2d 586 (Tenn. Crim. App. 1972). Implicit within these rights is the "opportunity to show that [the defendant] did not violate the conditions [of probation], [or] that there was a justifiable excuse for any violation or that revocation is not the appropriate disposition." *Black v. Romano*, 471 U.S. 606, 612, 105 S. Ct. 2254, 2258, 85 L. Ed. 2d 636 (1985).

Other jurisdictions have held, or implied, that a defendant may raise a defense against a finding that an action by the defendant violated the terms of his or her probation. For example, in situations where the commission of a criminal offense triggers a probation revocation proceeding, a defendant's physical illness or insanity at the time the criminal offense was committed may be raised as a defense against revocation. *Bahena v. State*, 560 S.W.2d 956 (Tex. Crim. App. 1978); *Casey v. State,* 519 S.W.2d 859 (Tex. Crim. App. 1975); *see also Marcano v. State*, 814 So. 2d 1174 (Fla. Dist. Ct. App. 4th Dist. 2002) (A defendant's mental illness may render a violation of probation not willful). In *Gagnon*, the supreme court found that a probationer must be provided the assistance of counsel when the alleged violation of probation is based on the commission of a criminal offense, and the probationer asserts a defense to his conduct. *Gagnon*, 411 U.S. at 790-91, 93 S. Ct. at 1764.

As the basis for revoking Defendant's probation, the State alleged that Defendant violated Tennessee Code Annotated section 39-16-201, which prohibits the possession of a controlled substance or a legend drug in a penal institution. A violation of this offense is a Class C felony. Tenn. Code Ann. § 39-16-201(b). If Defendant were independently prosecuted for this offense, she would be entitled to raise as a defense to prosecution that her conduct was "immediately necessary to avoid imminent harm." *Id*. §§ 39-11-601, -609. As this Court has previously noted, "[u]nder the statutory framework of our criminal code, all enumerated defenses are applicable defenses to all

criminal offenses unless otherwise provided by the code." *State v. Culp*, 900 S.W.2d 707, 710 (Tenn. Crim. App. 1994).

Accordingly, a defendant may raise a statutory defense during a revocation hearing to the extent that the violation of probation is based upon an allegation that the defendant has committed a criminal offense. To do otherwise would permit a defendant's probation to be revoked and confinement imposed based upon the commission of an offense that would otherwise be barred from prosecution by the existence of a statutory defense. *See* Tenn. Code Ann. § 39-11-609, Sentencing Commission Comments.

A violation of probation, unlike a determination of guilt, however, is based upon the preponderance of the evidence, notwithstanding the fact that the alleged violation rests upon the commission of an unlawful act. *Id.* § 40-35-311(e). Thus, if a defendant raises a statutory defense in response to the underlying criminal offense in a probation revocation hearing, the State need only prove by a preponderance of evidence that the statutory defense does not apply. *Compare* Tenn. Code Ann. § 39-11-201 *with* § 40-35-311.

Alternatively, the State argues that Defendant waived her right to raise the statutory defense of necessity on appeal because the defense was not raised at the probation revocation hearing. We agree that a party may not litigate one issue in the trial court, abandon that issue upon appeal, and then assert a new issue in the appeal. *See State v. Matthews*, 805 S.W.2d 776, 781 (Tenn. Crim. App.1990); *State v. Aucoin*, 756 S.W.2d 705, 715 (Tenn. Crim. App.1988). Based upon a review of the record, however, we find that Defendant, although perhaps not specifically termed as such, sufficiently raised the defense of necessity at her probation revocation hearing. Defendant's entire argument centered around the fact that she believed her actions regarding her medication were compelled out of necessity because of the lack of medical assistance in the jail. The trial court and the State were given the opportunity to address the defense asserted by the Defendant during the revocation hearing. Therefore, the issue is rightfully preserved in her appeal to this court. *See* Tenn. R. Crim. P. 36(a).

Defendant argues as a justification for her conduct that it was necessary to bring her medicine with her when she returned from furlough because the jail's doctor refused to dispense her medication the first time she was in jail. Defendant contended that she faced imminent harm when her medication was withheld because the withdrawal of her medicine caused her to become ill, and to experience auditory and visual hallucinations, nightmares and other side effects. Moreover, Defendant argues that her conduct was reasonable in view of the jail doctor's refusal to provide her with her prescription medicine. Defendant points out that she kept her medicine to herself and brought only so much of her prescriptions as was necessary to last the remaining fifteen days of her confinement. Defendant argues that the potential mental and physical harm thus outweighed the jail's interest in preventing the introduction of controlled substances into the inmate population.

The defense of necessity is available when "(1) the person reasonably believes the conduct is immediately necessary to avoid imminent harm; and (2) the desirability and urgency of avoiding

the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct." Tenn. Code Ann. § 39-11-609; *see State v. Culp*, 900 S.W.2d 707 (Tenn. 1994). As the sentencing commission comments observe, however, the defense of necessity arises only in those "exceptionally rare situations where criminal activity is an objectively reasonable response to an extreme situation." Tenn. Code Ann. § 39-11-609, Sentencing Commission Comments. The defense of necessity generally applies in situations where physical forces beyond the defendant's control force a choice between illegal conduct and imminent harm. *State v. Green*, 995 S.W.2d 591, 606 (Tenn. Crim. App. 1998); *State v. Davenport*, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998). The defendant's choice must not only be reasonable under the circumstances but must also be the only means available for avoiding the harm. *State v. Watson*, 1 S.W.3d 676, 678 (Tenn. Crim. App. 1999); *State v. Bult*, 989 S.W.2d 730, 732 (Tenn. Crim. App. 1998).

The trial court found that hiding her medicine was not the only means available to Defendant to address the problems surrounding her medical care while in jail. The trial court noted that Defendant had been on furlough for thirty days but had taken no steps to solicit the assistance of her attorney or physician in alerting the jail personnel of her medical needs in order to avoid the problems experienced during her first confinement. Moreover, the trial court found that Defendant did not truthfully answer the questions concerning her medical care on the jail's intake form, indicating instead that she was not on medication and that she controlled her diabetes through diet rather than drugs.

Based upon our review of the record, we find that the evidence does not preponderate against the trial court's finding that Defendant failed to establish the essential elements of necessity. Moreover, the preponderance of the evidence supports the trial court's finding that Defendant violated the terms of her probation. Based upon our review, we cannot conclude that the trial court abused its discretion in ordering Defendant to serve the remainder of her sentence in confinement.

## CONCLUSION

The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE